UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARCHITECTURAL BODY RESEARCH
FOUNDATION,

                              Plaintiff,

            v.

REVERSIBLE DESTINY FOUNDATION, INC.,
ESTATE OF MADELINE GINS, RONALD SPENCER
AND MICHAEL GOVAN AS DIRECTORS OF THE
REVERSIBLE DESTINY FOUNDATION, INC. AND
EXECUTORS OF THE ESTATE OF MADELINE
GINS, AND STEPHEN GINS, AS EXECUTOR OF
THE ESTATE OF MADELINE GINS,

                              Defendants.

Civil Action No.:


**COMPLAINT**


**DEMAND FOR JURY TRIAL**

The Architectural Body Research Foundation, Inc. ("ABRF"), by its undersigned

counsel, alleges, upon knowledge as to facts known to it, and upon information and belief as to

all other matters, as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      ABRF, a non-profit foundation, brings this action against Defendants for

copyright infringement, declaratory judgment, conversion and replevin in connection with the

unlawful taking and exploitation of a valuable work of art entitled *The Mechanism of Meaning*,

by the late artist Shusaku Arakawa ("Arakawa") and his wife, Madeline Gins ("Gins").

2.      ABRF was founded by Arakawa and Gins in May 1987 under the name Container

of Minds Foundation.  As set forth in its founding documents, the organization is dedicated to the

construction of large-scale, permanent monuments in the nature of architectural sculpture

manifesting a developing body of esthetic and perceptual thought.  The creation of those works

was a logical extension of the lifework of Arakawa and Gins and their seminal work of

conceptual art known as *The Mechanism of Meaning*.  The work exists in several editions and

media, including books, paintings and drawings.  At or about the time that the organization was

founded, Arakawa and Gins made a gift to ABRF of all works and background materials related

to *The Mechanism of Meaning*, including all intellectual property rights.  The gift is set forth in a

duly executed Deed of Gift dated May 15, 1987, annexed hereto as **Exhibit 1**.

3.      In December 2008, ABRF (and Gins) learned that they were victims of the Ponzi

scheme orchestrated by Bernard Madoff and Bernard Madoff Investment Securities LLC.  After

the fraud was discovered, ABRF learned that the Madoff accounts in its name – that were

supposedly worth approximately $20 million – were, in reality, worthless.  Due to those events,

ABRF dramatically scaled back its work, but continued research, writing and planning activities.

4.      In March 2010, Arakawa and Gins formed another organization, Reversible

Destiny Foundation, Inc. ("RDF"), to explore a different concept, referred to as "reversible

destiny," which is a philosophy of architecture as a tool to extend life and reverse death.  Upon

information and belief, the new foundation was also formed due to a concern that ABRF's future

would be negatively impacted, if not terminated, by any judgment recovered by the Trustee for

the liquidation of the Madoff investment entity.  After its formation, RDF pursued its own

activities, but ABRF continued as its own separate entity, and never transferred any property to

RDF, much less its core holding, *The Mechanism of Meaning*.

5.      Arakawa died on May 12, 2010.  Gins died on January 8, 2014.  Subsequently, the

directors of RDF and the executors of the Estate of Madeline Gins have sought to loot ABRF,

seizing possession and control of *The Mechanism of Meaning* under a false claim of ownership

and, upon information and belief, offering it for sale.  For example, RDF recently announced via

press release that it had partnered with the Gagosian Gallery, one of the largest art galleries in the

world, to represent Arakawa's art, and the press release suggests that RDF will sell one of the

two large suites of approximately 80 paintings that comprise an iconic edition of *The Mechanism of Meaning* that was exhibited by the Guggenheim Museum in 2007.  There is only one other edition of that large suite of paintings in existence, and it was sold by ABRF to the Sezon Museum of Modern Art in Japan in 1989 for approximately $3 million.  Upon information and belief, each of those two editions is now worth much more.  Upon further information and belief, RDF is also offering for sale other valuable paintings and drawings from *The Mechanism of Meaning*.  Defendants are also exploiting *The Mechanism of Meaning* in other ways, such as copying and posting elements of it on the RDF website and purporting to license the work to other parties.

### THE PARTIES

6.       ABRF was founded by Arakawa and Gins under the name Containers of Mind Foundation, Inc., which filed its Certificate of Incorporation on May 12, 1987.  The foundation later changed its name to ABRF, as per the Certificate of Amendment filed with the New York Department of State on March 25, 1998.  ABRF is a New York, not-for-profit Section 501(c)(3) foundation with a place of business located at 251 West 92nd Street, Apartment 2A3, New York, New York 10025.

7.       RDF is a separate and distinct foundation, with its own property, established by Arakawa and Gins in March 2010 for the purposes of promoting their work and philosophy of reversible destiny, to wit, the use of architecture and physical environment as a tool to explore how not to die and reverse death.  It is organized under the laws of Delaware with a place of business at 110 Lafayette Street, Suite 202, New York, New York 10013.

8.       Defendant Estate of Madeline Gins ("Gins Estate") is an estate created under a will dated March 15, 2013 (the "Gins Will"), which was admitted to probate in the Surrogate's Court for the County and State of New York on February 27, 2014.

3

9.      Defendant Ronald Spencer ("Spencer") resides at 1112 Park Avenue, New York, New York 10128.  Spencer is counsel to the law firm of Carter Ledyard & Milburn LLP ("Carter Ledyard"), a director and officer of RDF, and an executor of the Gins Estate.

10.     Defendant Michael Govan ("Govan") resides at 444 S. Muirfield Road, Los Angeles, California 90020.  Govan is the Director of the Los Angeles Museum of Art, a director of RDF and an executor of the Gins Estate.

11.     Defendant Stephen Gins ("Stephen") resides at 6235 North East 184th Street, Kenmore, Washington 98028.  Stephan is the brother of the late Madeline Gins, and is an executor of the Gins Estate.

## JURISDICTION AND VENUE

12.     This is an action for federal claims of infringement under the Copyright Act, 17 U.S.C. § 502(a) and (b), and declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201.  This action also asserts supplemental state law claims for conversion and replevin, for which there is subject matter jurisdiction under 17 U.S.C. § 1367(a).  Venue lies in this District pursuant to 28 U.S.C. § 1391 because one or more defendants resides in the State.

## THE FACTS

13.     **Arakawa, Gins and the formation and operation of ABRF.**  Arakawa was an internationally famous artist known for his paintings, drawings, prints, and visionary architectural constructions starting in the 1960's.  Gins, a noted poet, met Arakawa in 1962. They later married and created numerous important works of art together, principally paintings between the 1960's and 1987.  The works employed words and signs that highlighted and investigated the mechanics of human perception and knowledge, and they were exhibited at museums and galleries throughout North America, Western Europe and Japan.

4

14.     In 1987 Arakawa and Gins quit painting to make experimental architecture.  They pursued their work through a newly-formed foundation, ABRF.  ABRF thereafter pursued research, design and construction that investigated philosophical, existential and experiential questions about physical and environmental relationships of architecture as a physical body and the human body as a tectonic architecture.  Operated as a collective working studio and architectural production office, ABRF conducted research in the United States, Europe and Japan, to test experimental designs consisting of wild furniture, interior spaces, buildings, parks, landscapes and experimental architectural body cities.  Among the works built were:  a theme park in Yoro, Gifu Prefecture of Japan: Site of Reversible Destiny (2002); a nine-unit condominium, the Reversible Destiny Lofts-Mitaka in Tokyo; and Bioscleave House (Lifespan Extending Villa), an extension to a single-family house in East Hampton, New York.

15.     At or about the time that ABRF was formed, Arakawa and Gins executed a Deed of Gift, dated May 15, 1987, pursuant to which they "irrevocably and unconditionally" gifted to ABRF (then called by its original name, Containers of Mind Foundation, Inc.), all right, title and interest, including all copyrights and literary rights, to "the works of art, manuscripts and materials" related to *The Mechanism of Meaning*.  (*See* Exhibit 1).  The work gifted to ABRF pursuant to the Deed of Gift, including the intellectual property, is sometimes hereafter referred to as the "Deed of Gift Property."   ABRF acknowledged receipt of the Deed of Gift in the same document.

16.     RDF's website confirms that *The Mechanism of Meaning* is a conceptual work of art that exists in different mediums, including a series of publications, drawings and paintings. RDF's website further confirms that Arakawa and Gins saw *The Mechanism of Meaning* "as an ongoing work, an open-ended process of research and invention" that "represents a unique foray

into a region where art, experience and thought meet and define each other."  Defendant Michael

Govan also referred to the work as an "open-ended project" in the substantial book, *Reversible*

*Destiny - Arakawa/Gins*, that the Guggenheim Museum published to accompany the major

exhibition that Govan organized at the Museum in New York in 1997.  Govan's book

characterizes Arakawa as "a forerunner of the international conceptual art movement," and its

central essay covers in depth the versions in which *The Mechanism of Meaning* exists.

17.     The history of *The Mechanism of Meaning* is detailed on RDF's website too.  For

example, RDF's website identifies *The Mechanism of Meaning* as a group of large panels of

acrylic and mixed media on canvas that were originally shown at the Venice Biennale in 1970, a

larger group of panels that was subsequently exhibited in Germany, Italy and Switzerland in

1972, and numerous drawings that were added in a book edition published in 1978.  RDF also

describes another edition, published in 1988, which reproduces certain chapters of the work from

the second edition and replaces another chapter with an expanded selection of drawings and text.

In addition, RDF explains that the drawings in the 1988 edition comprise the second of the two

large editions of approximately 80 panels that is now in the Sezon Museum of Art in Karuizawa,

Japan.  An RDF webpage relating to *The Mechanism of Meaning* is annexed as **Exhibit 2**.

18.     The Deed of Gift was drafted to gift the entirety of *The Mechanism of Meaning* in

all of its forms, stages, and editions to ABRF.  For example, the Deed of Gift attaches a schedule

that was purposefully drafted as a broad conceptual description in order to capture the full nature

of the work as it was (and would be) expressed in books, paintings, drawings, and other

mediums.  ABRF's federal application for 501(c)(3) status further confirms the expansive nature

of the gift.  For example, Section 4(d) of the Form 1023 that was filed by ABRF with the Internal

Revenue Service on July 29, 1987, states:  "By Deed of Gift dated May 15, 1987, Arakawa and

Madeline Gins contributed all background material and works relating to The Mechanism of Meaning … to the organization."  A copy of the Form 1023 is annexed hereto as **Exhibit 3**.

19.     ABRF followed its filing of the Form 1023 with a letter to the Internal Revenue Service that expounds on the broad nature of the gift.  The letter emphasizes that *The Mechanism of Meaning*, in all of its "various stages," provided the "intellectual and theoretical underpinning" for ABRF as a foundation.  The letter states:

> We appreciate that the conceptual issues animating the Organization's program are not easy to grasp and we can understand your desire for "additional information … [to] help us better understand … [the] organization."  Therefore, we have enclosed:  (i) a copy of the original publication of "The Mechanism of Meaning" by Harry N. Abrams, Inc. in 1979, (ii) a photocopy of the manuscript of new material to be included in a revised edition of Mechanism to be published in March 1988 by Abbeville Press in New York City* (iii) photocopies of the fronstpieces and expository material from the German and French editions of the original Mechanism (published in Japanese as well).  This new edition will also be published in English, French, Japanese and, perhaps, other languages.  Mechanism in its various stages, is the seminal work that has inspired the Organization and provided the intellectual and theoretical underpinning for the Containers of Mind Project.

The footnote marked with an "*" to the manuscript of new material published in March 1988 noted that the additional works include "working drawings for the construction in Epinal, France, which will give you a concrete idea of the overall physical appearance of this project."

20.     **ABRF is victimized by Bernard Madoff.**  In December, 2008, it was revealed that Bernard Madoff ("Madoff"), through Bernard L. Madoff Investment Securities LLC ("BLMIS"), had engaged in a massive Ponzi scheme that vastly inflated the value of customer accounts.  Irving H. Picard ("Picard") thereafter was appointed as the Trustee for the Liquidation of BLMIS.  ABRF (and Gins) were among Madoff's many victims.

21.     ABRF had maintained four accounts at BLMIS dating back to 1997.  The accounts supposedly had been worth about $20,000,000, but, in reality, BLMIS' account statements reflected fictitious profits and the accounts were worthless.  Due to those events

ABRF dramatically scaled back its prior charitable activities in 2009, but it continued to work on research, writing and planning from its offices in New York.

22.     **The formation and operation of RDF.**  In March 2010, Arakawa and Gins formed RDF.  It was conceived and operated as a new foundation to promote the work and philosophy of Arakawa and Gins that focused on architectural design as a tool to extend life, and to explore how not to die.  As the name "Reversible Destiny" suggests, the work and philosophy explored the philosophy of reversing death.  Furthermore, upon information and belief, Arakawa and Gins formed RDF due to a concern that ABRF's future would be negatively impacted, if not terminated, by any judgment recovered by Picard from ABRF arising out of the Madoff fraud.

23.     RDF's original directors were Arakawa, Gins and Momoyo Homma ("Momoyo").  Momoyo, who resides in Tokyo, Japan, was (and remains) the only individual appointed as a director of both RDF and ABRF.  Notably, ABRF and RDF continued to operate as separate foundations; each of them possessed its own charter, by-laws, accounts and property, although they shared common officers and directors from time to time.

24.     ABRF never transferred any of the Deed of Gift Property, or any other of its property, to RDF.  In fact, any such transfer would likely have constituted a void, fraudulent transfer because the directors of both foundations knew that Picard's formal claw-back claims would be forthcoming, and that it would be wrongful to transfer the Deed of Gift Property from one foundation to the other without bona fide consideration.

25.     **Picard sues ABRF.**  Picard, as the Trustee for the Liquidation of BLMIS, filed a complaint against ABRF on December 2, 2010, asserting "claw-back claims" on account of ABRF's withdrawals of alleged fictitious profits of $7,833,954 over a six-year period, and $3,274,512 over a two-year period.  Although ABRF ultimately determined that it had no

meaningful defense to Picard's claim for $3,274,512, it has been unable to pay Picard's claim and unable to continue the charitable work of ABRF (as it had been conducted prior to 2009) because Defendants had deprived ABRF of its sole, major asset, to wit, the Deed of Gift Property that ABRF believes to be worth millions of dollars.

26.     **Events subsequent to the deaths of Arakawa and Gins.**  Arakawa died on May 12, 2010.  In seeking Letters of Administration in the New York County Surrogate's Court, Gins listed the value of Arakawa's personal property at $5,000,000.  Gins' petition did not identify any of the Deed of Gift Property as belonging to Arakawa at the time of his death.

27.     Gins died on January 8, 2014.  The Gins Will was filed in the New York County Surrogate's Court, and identified Spencer, Govan, and Stephen as her executors.  The Gins Will provided for three cash bequests and left the balance of her estate to the RDF in Article Three. Gins' Probate Petition identified testamentary assets valued at $14,000,000 for improved real estate, $2,700,000 in deposits and $3,000,000 for tangible personal property.  The Probate Petition did not identify any of the Deed of Gift Property as belonging to Gins.  Gins' executors filed an inventory of Gins' property that, upon information and belief, did not include the Deed of Gift Property.

28.     On June 23, 2016, Gins' executors filed a Petition for Payment on Account of Commissions Pursuant to SCPA 2311, that valued the assets they had received at $26,202,063.08, for stocks, bonds, works of art and cash.  The Petition did not include the value of any real estate.  Upon information and belief, the large increase in the value of Gins' personal property was attributable in part to the executors' decision to include in the Gins Estate the value of the Deed of Gift Property, notwithstanding that such property belongs to ABRF.

29.     After Arakawa's death on May 12, 2010, Gins and Momoyo were the only two directors of both ABRF and RDF.  Immediately after Gins' death on January 8, 2014, Momoyo became the sole director and officer of ABRF and RDF.  Momoyo then immediately appointed Johanna Post-MacNair ("Johanna") as a director of ABRF.

30.     In an Action by Consent of Momoyo, it was resolved on May 1, 2014, that Johanna would become president and a director of ABRF, and Andrew MacNair ("Andrew") would become vice president and treasurer of ABRF.  Thereafter, the three officers and directors of ABRF were Johanna, Andrew, and Momoyo.  Momoyo also appointed Johanna as a director of RDF immediately after Gins' death.

31.     Johanna is a Dutch-trained architect.  She started working at ABRF in 1999 as the project manager during the eight-year development and construction of Bioscleave House in East Hampton, NY, and as a design consultant on research and design projects.  Johanna worked closely with Arakawa and Gins at ABRF full time commencing in 2001, and helped with the production of buildings, interiors, landscapes, parks, new towns and cities.  Johanna was a close and devoted friend of Gins and, in fact, was left a $50,000 bequest in Gins' Will; and the Will contained a request that RDF's directors consider grants to Johanna "as shall express an interest working to further the purpose of the Foundation" and authorized and requested that Gins' executors consult with Johanna on matters within her areas of experience and expertise.

32.     Andrew, an architect and teacher, was a friend of Arakawa and Gins since 1981. In 1999 – 2000, he had been commissioned by ABRF to produce a draft book on the history of architectural models created by Arakawa, Gins and ABRF; and starting in 2000 he worked with them and ABRF as a consultant and regularly introduced scholars, critics, developers, bankers

and potential clients.  He also was a trusted assistant to Gins, who, after Arakawa died, asked Andrew to help her and ABRF carry the collective project forward.

33.     Since 2014, Johanna and Andrew have continued to carry out the work of ABRF with very little financial resources, as exemplified by the design workshop for high school and college students scheduled for July 8 – August 12, 2017 (see **Exhibit 4** hereto).

34.     **Defendants' refusals to return the Deed of Gift Property to ABRF.**  After becoming officers and directors of ABRF, Johanna and Andrew retained counsel and spent a considerable amount of time and effort to resolve Picard's claw-back claim, in the course of which they identified the Deed of Trust Property to Picard as a potential asset that could be used to satisfy the claim.  They also initiated discussions with RDF (a) to propose that ABRF and RDF work together in a mutual and cooperative way to carry forward Arakawa/Gins projects in New York and Japan, and (b) to determine the location of the Deed of Gift Property.  They also requested that the Deed of Gift Property be returned to ABRF.

35.     RDF's representatives, including the above-named defendants, have refused to comply with the request to return the Deed of Gift Property.  The reasons for their refusal have been inconsistent, have shifted over time, and lack any logic or legal basis.

36.     For example, RDF representatives stated to Johanna and Andrew, and later to Momoyo, that "no prior writing meant anything" and that nothing would be returned to ABRF because the Gins Will had left all of her property to RDF, except for certain cash bequests.  That statement by RDF representatives did not make any sense because, as set forth above, the Deed of Gift Property belonged to ABRF at the time of Gins' death; it did not belong to Gins and therefore could not have been transferred in the Gins Will.

37.     On another occasion, ABRF's prior counsel, Howard Freedman, made an inquiry concerning the Deed of Gift Property to Spencer, the RDF board member who, as senior counsel at his law firm, also acts as RDF's legal counsel.  Spencer could not, and would not, identify any document or transaction by which RDF could have acquired the Deed of Gift Property.

38.     On another occasion, RDF's representatives purported to justify its appropriation of the Deed of Gift Property by telling Momoyo that it was listed in an inventory of Arakawa's estate, that Arakawa's property had been gifted to Gins in Arakawa's estate, and that Gins had left her property to RDF in her will.  That statement does not make any sense, as the property belonged to ABRF at the time of Arakawa's death.  Also, RDF has not offered any documentation to support any of its contentions.

39.     On another occasion, RDF's Executive Director, Peter Katz, told Johanna that the Deed of Gift Property did not have to be returned to ABRF because it was in the possession of the Gins Estate and that "possession constituted 99% of the law."  Defendants should be aware that wrongful possession of property does not confer actual legal ownership.

40.     On September 13, 2017, Defendants offered yet another, and completely new explanation for their conduct.  By way of background, Andrew wrote to the executors of Gins' Estate and to RDF on October 7, 2015 (copy of letter annexed as **Exhibit 5** hereto), noting that he possessed the Deed of Gift and requested a conversation and review of the situation so that there would be a "return of ABRF assets in the current inventory of the Estate of Madeline Gins."  The letter did not receive a response.  As a consequence, Andrew retained litigation counsel for ABRF to address the situation.  After receiving a draft complaint from ABRF's litigation counsel, Defendants responded that the Deed of Gift did not actually pertain to *The Mechanism of Meaning* in its entirety; rather, according to them, the Deed of Gift pertains only

to one of the editions of *The Mechanism of Meaning*, namely the second edition of the approximately 80 panel edition of paintings that was already sold to the Sezon Art Museum in 1989. Defendants claim that they are therefore entitled to all of the other works, including the first edition of approximately 80 paintings, and all of the related publications, drawings, and paintings.

41.     Defendants' latest position makes no sense, for several reasons. First, the Deed of Gift refers to *The Mechanism of Meaning* in its entirety, which is described on RDF's own website as a conceptual work that incorporates different editions in various mediums, and is not limited only to one set of panels. Any other reading of the Deed of Gift contradicts the express and contemporaneous statements made by Arakawa and Gins in the ABRF filings to the Internal Revenue Service in 1987. Second, as set forth in paragraph 15 above, the Deed of Gift refers to the copyrights and literary rights to *The Mechanism of Meaning*. Those intellectual property rights necessarily overlap in the multiple editions of the work, making Defendants' artificial limitation of the Deed of Gift to one set of panels unintelligible. Indeed, RDF's website notes that the panels of *The Mechanism of Meaning* are presented in "chapters," and that the second suite of panels "reproduces the first fifteen chapters" out of the original sixteen chapters in the prior edition. If the chapters are duplicates, the copyright in and to those chapters is the same.

42.     Defendants' claim to own the first of the two large editions of *The Mechanism of Meaning* paintings is also illogical. Even if the two editions could be separated as unrelated works for the purposes of the Deed of Gift (and they should not be), it makes no sense that the Deed of Gift would apply only to the second edition, because the second edition *was not even completed until 1988*, which is *after* the Deed of Gift was executed on May 15, 1987. Indeed, RDF's website confirms that "the second version of *The Mechanism of Meaning* 1988" is the one

13

that is "in the collection of the Sezon Art Museum, Karuizawa, Japan." (*See* Exhibit 2).  The

Sezon Art Museum also confirms the completion date of the edition as 1988 on its web page.

(The museum web page is annexed hereto as **Exhibit 6.**)  Defendants' concession that ABRF

owned the second edition therefore *confirms* that Arakawa and Gins gifted to ABRF *all* of the

work (whether completed or in process) that related to the ongoing project.  There is no rationale

for Defendants' position that ABRF's ownership of the second edition, which was not even

completed at the time of the Deed of Gift, negates its ownership of the first edition, much less

negates its ownership of any other materials related to the project.

43.     On October 3, 2017, Defendants sent to ABRF the Sale Agreement (in English

and Japanese versions) between the Container of Mind Foundation and the Sezon Art Museum

dated March 15, 1989 (both annexed as **Exhibit 7** hereto).  That document further confirms

ABRF's ownership of the first large edition of paintings, for at least two reasons.  First, the Sale

Agreement refers to one "set" of *The Mechanism of Meaning*, and defines the set as a "series of

works consisting of 81 paintings, 45 drawings and 1 architectural model," thereby confirming the

nature of *The Mechanism of Meaning* as an open-ended project that exists in multiple series,

configurations, and mediums.  Second, the Sale Agreement confirms that the gift to ABRF could

not have been limited to one set of paintings because the sale to the Sezon Art Museum also

included 45 drawings and an architectural model.  ABRF could not have sold those additional

works to the museum unless they were given to ABRF by Arakawa and Gins together with the

paintings.

44.     **RDF's wrongful use of ABRF's property.**  Defendants' wrongful conduct is not

limited to its refusal to return the physical property covered by the Deed of Gift.  Defendants

have also willfully infringed ABRF's copyrights in the property.  For example, RDF's website

includes one page titled *The Mechanism of Meaning* that features high resolution photos of five panels, as well as another page that features three high resolution images from separate book editions.  RDF did not seek or obtain any permission for these uses; and, in fact, RDF wrongly claims copyright credit on its home page:  "© Reversible Destiny Foundation 2016."

45.      Upon information and belief, RDF and/or the Estate of Madeline Gins is also engaged in improper licensing activity to non-parties related to the images for *The Mechanism of Meaning*.  Although ABRF is unable to determine the full extent of the improper licensing activity without discovery, there are several examples of the conduct available to the public online.  For example, the website for the Sezon Art Museum features a high resolution image of one panel with the credit line:  "© 2016 Estate of Madeline Gins."  (*See* **Exhibit 6**).  Defendants should be aware that they have no rights to license this image, especially given their concession that the panels at the Sezon Art Museum (and copyrights associated therewith) were part of the Deed of Gift Property.  The Sale Agreement with the Sezon Art Museum merely transferred the title to the physical works; it did not transfer any of the underlying copyrights.

46.      There is also a website, www.michael-whittle.com, that features high resolution photographs of four other panels with the following credit lines:  "© 2017 Estate of Madeline Gins.  Reproduced with permission of the Estate of Madeline Gins."  Defendants neither sought nor obtained any rights from ABRF to permit these images to be licensed and reproduced.

47.      Upon information and belief, Defendants have also partnered with the Gagosian Gallery, one of the largest and best known art galleries in the world, to sell works that are part of *The Mechanism of Meaning*.  For example, RDF announced via press release that it had partnered with the gallery to represent Arakawa's art and the release highlights that "chief among [Arakawa's works] is *The Mechanism of Meaning* (1963 – 1973), an 80 – panel painting series

that exists in two different versions, one at the Sezon Museum of Modern Art in Japan and the other in the holdings of the foundation." The release implies that the works are for sale. The release was picked up by the major art news outlet, Artnews, which published a story that featured more images that were, upon information and belief, improperly licensed by the Estate of Madeline Gins, with a credit line: "© 2016 Estate of Madeline Gins. Reproduced with permission of the Estate of Madeline Gins/Courtesy Gagosian." RDF has posted the release and Artnews story, with the accompanying images, on its website. (See **Exhibit 8** hereto).

48.     During May 2 – 26, 2017, the Gagosian Gallery also showcased approximately six paintings by Arakawa in its gallery, including one work from the *Mechanism of Meaning* that exists outside of one of the 80 panel suites (see **Exhibit 9** hereto). Upon information and belief, the showcase promoted the historical significance of Arakawa and Gins, and the gallery most likely offered particular works for sale to some of its most important clients. Upon information and belief, the gallery also is preparing a major show in the near future to sell additional works.

## <u>COUNT ONE: COPYRIGHT INFRINGEMENT</u>

49.     ABRF incorporates herein by this reference each and every allegation contained in paragraphs 1 through 48.

50.     ABRF owns the copyrights to *The Mechanism of Meaning*, as set forth in the Deed of Gift, and described in ABRF's filings with the Internal Revenue Service in 1987.

51.     Through the conduct alleged herein, Defendants have infringed, and continue to infringe, on ABRF's copyrights, in violation of the Copyright Act, 17 U.S.C. § 106 and 501.

52.     Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to ABRF's rights.

53.     As a direct and proximate result of said infringement by Defendants, ABRF is entitled to damages in an amount to be proven at trial. ABRF is also entitled to Defendants'

profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting

of and a constructive trust with respect to such profits.

54.     ABRF is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C.

§ 505 and otherwise according to law.

55.     As a direct and proximate result of the foregoing, ABRF has sustained and will

continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate

remedy at law.  ABRF is informed and believes, and on that basis avers, that unless enjoined and

restrained by this Court, Defendants will continue to infringe ABRF's rights.  ABRF is entitled

to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT TWO:  DECLARATORY JUDGMENT

56.     ABRF incorporates herein by this reference each and every allegation contained

in paragraphs 1 through 55.

57.     Through the conduct alleged herein, Defendants have made clear that there is an

actual and justiciable controversy regarding the ownership and control of the copyrights in and to

*The Mechanism of Meaning*, including the texts and visual images related thereto.

58.     Without a judicial adjudication of the parties' conflicting positions, the licensing

and other exploitation of *The Mechanism of Meaning* will remain subject to uncertainty and

dispute.  A declaratory judgment as to the correct copyright ownership of the work will therefore

serve a useful purpose in settling the respective legal rights and obligations of the parties.

59.     ABRF is also entitled to recover its attorneys' fees and full costs in pursuing this

declaratory judgment.

## COUNT THREE:  CONVERSION

60.     ABRF incorporates herein by this reference each and every allegation contained

in paragraphs 1 through 59.

17

61.     ABRF is the legal owner of *The Mechanism of Meaning*.  Andrew's letter of October 7, 2015, to the executors of the Gins Estate and RDF identified the Deed of Gift, made plain that the property belonged to ABRF, and requested the "return of ABRF's assets in the current inventory of the Estate of Madeline Gins."  The executors of the Gins Estate and the directors of RDF refused to respond in writing to that demand.  Instead, they have intentionally taken and retained control of ABRF's property and claimed to be the owners of such property, to the exclusion of ABRF's rights to the ownership and exclusive possession of such property.

62.     ABRF is entitled to either a return of *The Mechanism of Meaning* and/or to damages resulting from the conversion thereof.

63.     Upon information and belief, each of the Defendants intended to cause harm to ABRF and each of them acted willfully and wantonly to cause that harm.  Accordingly, ABRF is also entitled to an award of punitive damages.

### COUNT FOUR:  REPLEVIN

64.     ABRF incorporates herein by this reference each and every allegation contained in paragraphs 1 through 63.

65.     ABRF is the legal owner of *The Mechanism of Meaning*. Andrew's letter of October 7, 2015, to the executors of Gins' Estate and to RDF, identified the Deed of Gift, made plain that the Deed of Gift Property belonged to ABRF, and requested the "return of ABRF's assets in the current inventory of the Estate of Madeline Gins."  The executors of the Gins Estate and the directors of RDF refused to respond in writing to that demand, and refused to return the Deed of Gift Property to ABRF.  Based on the records of the New York County Surrogate's Court, it appears that the Gins Estate remains open and it is unclear whether the executors of that estate have transferred ownership of any of the Deed of Gift Property to RDF, or any other entity

or person.  Based on the press release reflected set forth in Exhibits 8 and 9 hereto, it appears that the RDF is claiming to be the owner and possessor of property described in the Deed of Gift.

66.     Defendants have a legal obligation to return *The Mechanism of Meaning* to ABRF.

67.     Upon information and belief, each of the Defendants intended to cause harm to ABRF and each of them acted willfully and wantonly to cause that harm.  Accordingly, ABRF is also entitled to an award of punitive damages.

WHEREFORE, Plaintiff demands relief as follows:

A.     On the First Count for Copyright Infringement, damages in such amount as may be found, or as otherwise permitted by law; an accounting of and imposition of constructive trust with respect to Defendants' profits attributable to the infringement, and an injunction prohibiting Defendants and their respective agents from continuing infringing activity; and attorneys' fees and costs related to this claim.

B.     On the Second Count for Declaratory Judgment, an Order declaring that ABRF is the sole and exclusive owner of *The Mechanism of Meaning* in its entirety, including the copyrights and literary rights related thereto, as stated in the Deed of Gift, and attorneys' fees and costs related to this claim.

C.     On the Third Count for Conversion, Defendants should immediately return to ABRF the Deed of Gift Property in its entirety, including all physical works and intellectual property associated with the copyrights, together with a description of any works that they have purported to transfer, with or without consideration, and the name of every transferee; and they should account for and pay all sums realized upon the sale of any such works.  In addition to any

appropriate compensatory damages, Defendants also should be liable for punitive damages in an amount to be determined at trial, but in no event less than $1,000,000.

   D.  On the Fourth Count for Replevin, Defendants should immediately return to plaintiff the Deed of Gift Property in its entirety, including all physical works and intellectual property associated with the copyrights, and should account to Plaintiff for, and pay to Plaintiff, all sums realized upon the sale of any such works.  In addition to any appropriate compensatory damages, Defendants also should be liable for punitive damages in an amount to be determined at trial, but in no event less than $1,000,000.

   E.  Such other and further relief that this Court deems to be just and proper, including all costs incurred by Plaintiff in this action.

Dated:  New York, New York
   October 10, 2017

              DENTONS US LLP

             By:  /s/ David R. Baum
                David R. Baum

             1221 Avenue of the Americas
             New York, New York 10020
             (212) 768-6700

             *Attorneys for Plaintiff*

Leonard S. Baum, Esq.
*Of Counsel*

104647477